May Term, 1835.

M'GEE
v.
GIVAN.

---

M'GEE *v.* GIVAN and Another.

Trespass for breaking and entering the plaintiff's close and stable, and taking away two horses. Plea, that an execution of *fieri facias* against a third person was delivered to the sheriff, &c.; that the horses belonged to the execution-debtor and were subject to the execution; that the sheriff, by virtue of the execution, and the defendants by his command, broke and entered into the close and stable and took the horses, &c. Replication, that the horses did not belong to the execution-debtor, but to the plaintiff. *Held*, on general demurrer, that the replication was sufficient.

Wednesday, May 27.

ERROR to the *Hendricks* Circuit Court.

STEVENS, J.—*M'Gee* declared against *Givan* and *Nave* in an action of trespass *with force and arms*, for entering into his close, breaking his stable door, and taking and leading away two certain geldings. The defendants by their plea admit that they did, in manner and form as charged, enter the close and break the stable door of him the said *M'Gee*, and take and lead away the said two geldings; but they justify the act, under and by virtue of two certain writs of execution of *fi. fa.* which they allege were then in the hands of the sheriff of the county against a certain Mr. *Teel*, to be levied on the goods and chattels, &c. of the said *Teel;* and that the said two geldings were the goods and chattels of the said *Teel*, and subject to said writs of execution; and that they, by the command of the said sheriff, and as his servants, entered with the said sheriff into the said close and stable, and took and led away said geldings as the goods and chattels of the said *Teel*, under and by virtue of the said writs of execution. *M'Gee* replied that the said two geldings were not the goods and chattels of the said *Teel*, but that they were the goods and chattels of him the said *M'Gee*. To which replication the defendants filed a general demurrer. The demurrer was sustained, and final judgment rendered for the defendants.

The only question presented by this case for our considera-tion is as to the sufficiency of the replication. The Court be-low declared it insufficient; and we are asked to do the same.

The objection raised is, that it does not sustain the declaration; that it abandons the cause of action set out in the declaration, and is what is called a departure in pleading. It is a well set-tled rule, that the replication must not depart from the allega-tions in the declaration. A departure in a replication is said to be, when the plaintiff quits or departs from the original cause of action in his declaration, and has recourse to another which is distinct from and does not fortify the first. In the pre-sent case the cause of action laid in the declaration, is the breaking and entering of the plaintiff's close, and breaking down his stable door, &c. with force and arms, &c. The de-fence unqualifiedly admits the whole charge in the declaration to be true, but avers that the defendants might lawfully do so, because of, and by virtue of, two certain writs of execution, which it is alleged were in the hands of the sheriff, to be levied on the goods and chattels, &c. of one *Teel*, and that two cer-tain geldings, the goods and chattels of the said *Teel*, were on the premises and in the stable of him the said plaintiff, and that they broke and entered as charged, &c. to execute the said geldings as the goods and chattels of the said *Teel*, as they lawfully might, &c. Now if the whole of the facts alleg-ed in justification are not true, the plaintiff's cause of action stands confessed. The justification set up consists of two dis-tinct sets of facts. First, as to the existence of the writs of execution against the goods and chattels of *Teel*, &c. Second-ly, as to the two geldings being the goods and chattels of *Teel*, &c. Both must be true or the plaintiff must recover. The writs of execution against *Teel* could not justify an entry into the close of a stranger, unless the goods and chattels of *Teel* were there: hence both sets of facts must be true, or the plain-tiff must recover. All the plaintiff had to do, to sustain his de-claration, was, in a proper manner to deny either one or both of these facts; for if either should prove to be untrue, the cause of action would stand confessed. The replication admits the fact of the existence of the executions to be true, but denies that the said geldings were the goods and chattels of *Teel*.

This replication is very informal, but it is clearly good in sub-stance. The defendants have confessed that they are tres-

3

passers, in manner and form as they stand charged, if these said geldings were not the goods and chattels of the said *Teel,* and the plaintiff has tendered an issue upon that fact. All the other facts in the case stand confessed on both sides, leaving that single allegation in dispute. If that allegation shall prove to be false, the plaintiff will recover his cause of action laid in the declaration, just as it is there laid. The simple question is, were these geldings the goods and chattels of *Teel,* and subject to these executions? It is perfectly immaterial to whom the geldings did belong, if they did not belong to *Teel.*

The demurrer to this replication is general and should have been overruled. There is nothing that presents even a shadow of a departure in pleading, and the informality of the replication cannot be reached by a general demurrer (1).

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. W. Wick* and *J. Morrison,* for the plaintiff.
*C. Fletcher,* for the defendants.

(1) In the case in the text, the plaintiff could not deny all the allegations in the plea, by the general replication of *de injuria sua propria absque tali causa;* because the execution, which is a matter of record, could only be denied by a replication of *nul tiel record.* But the plaintiff might, after admitting or protesting the execution, have replied *de injuria sua propria absque residuo causæ;* and such a replication would have put the defendants on the proof that the horses of the execution debtor were in the plaintiff's stable, and that the sheriff, and the defendants by his command, entered and seized the horses under the execution. *Lucas et al.* v. *Nockells,* 10 Bingh. 157.

The sheriff may break open the *outer door* of a barn or out house, detached from the dwelling house, in order to execute a *fieri facias,* even without making a demand that the door should be opened. *Penton* v. *Browne,* 1 Sid. 181, 186. Wats. on Sheriffs, 173. Smith's Lead. Cas. 45. In a leading case respecting the sheriff's right to break open doors, the following points are resolved:

1. The house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose.

2. When any house is recovered by any real action or by *eject. firmæ,* the sheriff may break the house and deliver the seisin or possession to the demandant or plaintiff.

3. When the king is a party, the sheriff (if the doors be not open) may break the party's house, either to arrest him or to do other execution of the process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open the doors.

4. When the door is open, the sheriff may enter the house and do execution, at the suit of any subject, either of the body or of the goods; but the sheriff cannot, (on request made and denial,) at the suit of a common person, break the defendant's house, sc., to execute any process at the suit of any subject.

5. The house of any one is not a castle or privilege but for himself, and does not extend to protect any person who flies to his house, or the goods of any other which are brought into his house, to prevent a lawful execution and to escape the ordinary process of law. *Semayne's* case, 5 Coke's Rep. 91.

If the defendant, after an arrest on *civil* process, escape to the house of a stranger or to *his own house*, the officer may, upon fresh suit, break open the *outer* door in order to retake him. And in *criminal* cases, the *outer* door of the house of the defendant or a stranger may be broken open by the officer, in order to arrest the defendant in the first instance. Foster's Cr. Law, 319, 320. So, also, such door of a stranger's house may be broken, for the purpose of levying an execution on the defendant's goods, *if they be fraudulently concealed there.* Wats. on Sheriffs, 59, 174.

In the cases, whether criminal or civil, in which the sheriff may break open the *outer* door of a dwelling house, either of the defendant or of a stranger, to execute process, a demand of admission should first be made. *Burdett* v. *Abbott,* 14 East, 1, 163.—*Lannock* v. *Brown et al.* 2 Barn. & Ald. 592.—Foster's Cr. Law, 319, 320.—*Hutchison* v. *Birch,* 4 Taunt. 619.

The *inner* door of a house, though it be the door of a lodger's room, and cupboards, trunks, &c. may be broken open by an officer, even in civil cases, to execute the duty of his office, *without any demand that they should be opened.* *Lee* v. *Gansel,* Cowp. 1.—*Hutchison* v. *Birch,* supra.—*Lloyd* v. *Sandilands,* 8 Taunt. 250.

The sheriff enters the house of a stranger at his peril. If the defendant or his goods be not found there, the sheriff is a trespasser. It is otherwise, however, if the sheriff enter the defendant's own house. He may not find the defendant or his goods there, and still justify the entry. And it is held, that under a *fieri facias* against the goods of an intestate, in the hands of his administratrix, or of her husband and her, in her right since the marriage,—the sheriff may justify an entry into the husband's house to search for goods of the intestate, though none be found there, that being the most natural custody for them. *Cooke* v. *Birt,* 5 Taunt. 765.

On the subject of this note, *vide* Smith's Leading Cases, 39 and notes.—*State* v. *Thackam et al.* 1 Bay's Rep. 358.—*State* v. *Smith,* 1 New Ham. Rep. 346.—*Haggerty* v. *Wilber,* 16 Johns. Rep. 287.—1 East's Cr. Law, 321 to 324.